IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| STEVEN A. SWAN<br>Plaintiff<br><br>v.<br><br>PAUL J. BARBADORO<br>CELESTE A. QUIMBY<br>WILLIAM E. MORSE<br>JAMES W. CHAPMAN, JR.<br>THOMAS P. COLUNTUONO, and<br>An Unknown Judge of the Circuit<br>Court of Appeals for the First Circuit<br><br>Defendants | Civil No. 05-401ECT (DC-NH)<br>05-491T (DC-RI) |

AMENDED COMPLAINT

PETITION FOR DECLARATORY AND FURTHER RELIEF

JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter with respect to my petition for declaratory and further relief pursuant to 28 U.S.C. §§ 1331, 2201 and 2202. It has jurisdiction regarding the violations of my civil rights pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) and § 42 U.S.C. § 1985 (2) and (3). It also has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2).

2. This Court is the proper venue to hear this case pursuant to 28 U.S.C. §§ 1391(e) and 1402(b).

PARTIES

3. Me, Steven A. Swan, Plaintiff, Prisoner Number 00259-049, Federal Medical Center, Devens, P.O. Box 879, Ayer, MA 01432.

4. Paul J. Barbadoro, Chief District Court Judge for the District of New Hampshire, in his official as well as individual capacity.

5. Celeste A. Quimby, CSR-RPR-RMR, an Official Court Reporter of

of this Court; in her official as well as individual capacity;

6. William E. Morse, Assistant U.S. Attorney for the District of New Hampshire; in his official as well as individual capacity;

7. James W. Chapman, Jr., a trial attorney for the U.S. Department of Justice in Washington, D.C; in his official as well as individual capacity;

8. Thomas P. Coluntuono, the United States Attorney for the District of New Hampshire; in his official as well as individual capacity; and

9. An unknown appellate motions judge for the Circuit Court of Appeals for the First Circuit, in his or her official as well as individual capacity.

FACTS OF THE CASE

10. On February 12, 2004, I was convicted by a jury of this Court for violations of the internal revenue laws. For most of the proceedings of that case prior to my conviction, a court-appointed standby counsel (Attorney Michael Shklar of the firm of Elliott, Jasper, Auten, and Shklar of Newport, New Hampshire) had been assigned to assist me.

11. On or about December 24, 2003 (approximately a couple of months before my trial was scheduled to commence), I wrote a letter to the clerk of this Court inquiring as to how much assistance my court-appointed standby counsel was authorized to provide me. On January 5, 2004, Chief Judge Paul J. Barbadoro (the designated trial judge of that case) convened a special motions hearing regarding the letter I sent to the clerk.

12. At that motions hearing, Chief Judge Barbadoro explained to me that Attorney Shklar was available to assist me with virtually anything I needed, except that he could not speak for me, nor could he submit filings to the Court on my behalf.

13. Within minutes after the jury returned its verdict against me,

Chief Judge Barbadoro informed me that my court-appointed standby counsel would not be available to assist me with the sentencing phase of my case. He stated that I would have to decide whether I wished to continue representing myself through the sentencing phase or whether I would like him to appoint my standby counsel to represent me. He informed me that the sentencing phase was a highly-legal, highly-structured process and that it would be to my advantage to have an experienced attorney represent me.

14. I told Chief Judge Barbadoro that I had not really been thinking that far ahead at that point and that I would like some time to think about his ultimatum to me. He gave me one (1) week to make a decision and notify the Court. Two (2) of the co-defendants of this present action, Assistant U.S. Attorney Morse and Department of Justice Trial Attorney Chapman, were both present when Chief Judge Barbadoro made his ruling.

15. Immediately after Chief Judge Barbadoro left the courtroom, my court-appointed standby counsel, anticipating that I probably would wish to continue representing myself rather than have him appointed to represent me, approached the deputy clerk to inquire about submitting his voucher to the Court so that he could be paid for his services. It was obvious by his actions that he was aware that Chief Judge Barbadoro had ruled that he would not be allowed to assist me with the sentencing phase of my case as my standby counsel.

16. On February 19, 2004, I informed this Court by way of letter to the clerk that I had decided to continue representing myself rather than having Attorney Shklar appointed to repre-

sent me.

17. As my case progressed toward my sentencing hearing, I noticed that the clerk was continuing to send notices to my former standby counsel. On May 24, 2004, I wrote a letter to the clerk asking him why he continued to do so in light of the fact that Chief Judge Barbadoro had ruled that Attorney Shklar would not be allowed to assist me with the sentencing phase of my case. On June 1, 2004, the chief deputy clerk informed me that, absent a court order, an appointment of standby counsel continues to the conclusion of the case. This statement was directly contrary to what Chief Judge Barbadoro had ruled on February 12th.

18. Furthermore, on June 4, 2004, in an Opposition and sworn Affidavit to a motion I had filed, Assistant U.S. Attorney Morse asserted that my former standby counsel was still available to assist me. This was also contrary to what Chief Judge Barbadoro had ruled.

19. On June 14, 2004, I sought concurrence from the Government for a motion to the Court to clarify its ruling of February 12th that my standby counsel would not be available to assist me with the sentencing phase of my case. The Government did not grant its assent to my proposed motion. However, with my sentencing date of June 24th looming near and me being overwhelmed with all of the things that the sentencing process entails, I never found the time to file that motion.

20. On June 24, 2004, (the same day that the Supreme Court of the United States decided the case of Blakely v. Washington, 124 S.Ct. 253) Chief Judge Barbadoro sentenced me. However, after realizing that he had probably sentenced me illegally in light of Blakely, he vacated my sentence and scheduled me to be re-

sentenced on July 21, 2004.

21. Near the end of my re-sentencing hearing on that date, Chief Judge Barbadoro asked if there were any other issues that anyone wished to raise. At that point I asked him to clarify his ruling of February 12th that my court-appointed standby counsel would not be allowed to assist me with the sentencing phase of my case. Chief Judge Barbadoro denied that he had ever made such a ruling. I persisted, but he continued to maintain that he had ever made such a ruling. I then asked my former standby counsel (who was present at the hearing, but who had not assisted me with the sentencing phase of my case per Chief Judge Barbadoro's ruling) if Chief Judge Barbadoro had not, in fact, ruled that he would not be able to assist me with the sentencing phase of my case. Attorney Shklar confirmed that that was Chief Judge Barbadoro had ruled. However, even with this direct confirmation by Attorney Shklar, Chief Judge Barbadoro continued to maintain that he had never made such a ruling.

22. When I returned home after being resentenced (Chief Judge Barbadoro gave me a couple of weeks before I had to report to prison), I checked the transcript of February 12, 2004 to check the exact wording of Chief Judge Barbadoro's ruling. Much to my astonishment, his ruling had been expunged from the official record! However, the portion where he gave me one week to decide if I wished to continue representing myself or if I wished him to appoint my standby counsel to represent me remained. (I believe that Chief Judge Barbadoro and the court reporter erred in not expunging this portion from the record as well since it tends to demonstrate that the ruling itself had been removed. Why would Chief Judge Barbadoro have given me one week to make a

decision if he had not, in fact, made such a ruling? He had not given me ultimatums as to whether or not I wished to continue representing myself or have Attorney Shklar appointed to represent me with during any of the other phases of my case.)

23. On August 4, 2004, I reported to prison to begin serving my sentence. I am currently on direct appeal in the Circuit Court of Appeals for the First Circuit. (Case Nos. 04-2078 and 04-2103 [the Government's Cross-Appeal]) (The Case No. of my original criminal case in this Court to which I have been referring is 03-CR-036-B.)

24. On October 6, 2004, I mailed to this Court a motion for the correction of the record regarding the denial of the assistance of my standby counsel to me for the sentencing phase of my case. The Government never responded to my motion. On October 19, 2004, Chief Judge Barbadoro denied my motion.

25. On March 10, 2005, I filed a motion with the Circuit Court of Appeals for the First Circuit requesting an order to this Court to correct the record to reflect what Chief Judge Barbadoro had ruled on February 12, 2004. On March 28, 2005, the Government (through U.S. Attorney Coluntuono and Assistant U.S. Attorney Morse) filed an opposition to that motion. In it, the Government stated that the accuracy of the transcript in question was well-corroborated by both the memories of the district court (Chief Judge Barbadoro) and AUSA Morse, as well as by "subsequent events." (AUSA Morse appended his sworn affidavit to the Government's opposition stating that Chief Judge Barbadoro never stated, suggested, nor implied that my former standby counsel would not be available to assist me with the sentencing phase of my case.

26. The Government delineated the "subsequent events" referred to above as the district court and the Government continuing to serve orders, notices, and pleadings on my former standby counsel and, in at least one post-trial pleading, the Government noting the availability of my former standby counsel to assist me. The Government then stated that my former standby counsel had acknowledged that he and I had continued to correspond and that he continued to render advice to me and appear at hearings with me. However, the statements by the Government noted in that last sentence are incorrect. As I noted in my reply to the Government's opposition to my motion (filed with the Circuit Court of Appeals on April 6, 2005), the only time that I corresponded with my former standby counsel between the time that Chief Judge Barbadoro ruled that he would not be available to assist me and my June 24, 2004 sentencing hearing was approximately ten (10) days prior to that hearing. At that time, I was simply attempting to get a general idea about what might transpire at that hearing. And the only hearing that Attorney Shklar ever attended with me during that time frame was my sentencing hearing itself, when it would have been too late for him to advise me about the sentencing process.

27. As of this date, I am still waiting for the unknown designated Motions Judge of the Circuit Court of Appeals (named as a co-defendant in this case) to rule on my motion. On May 2, 2005, I inquired with the clerk of that court as to the status of my motion. He replied that it was still before the court. On August 1, 2005, I mailed another motion to the Circuit Court of Appeals requesting that it rule on my original motion. However, nothing has happened.

28. When Chief Judge Barbadoro incorrectly ruled on February 12, 2004 that my court-appointed standby counsel would not be available to assist me with the sentencing phase of my case, I was damaged by the fact that I was denied the assistance of his counsel. The damages I suffered have been compounded since then my the numerous conspiracies which have ensued in attempts to cover up Chief Judge Barbadoro's incorrect ruling.

ISSUES PRESENTED FOR DECLARATORY RELIEF

29. That Chief Judge Barbadoro violated my civil rights to assistance of counsel and due process of law by denying me the assistance of my court-appointed standby counsel for the sentencing phase of my case;

30. That Assistant U.S. Attorney Morse and Department of Justice Trial Attorney Chapman violated my civil rights by failing to inform Chief Judge Barbadoro on the last day of my trial (February 12, 2004) that he was incorrect in ruling that my standby counsel would not be available to assist me with the sentencing phase of my case;

31. That Chief Judge Barbadoro violated my civil rights by ordering or otherwise conspiring with Court Reporter Celeste A. Quimby to alter the official record of February 12, 2004 to expunge the portion of the record where he ruled that my standby counsel would not be available to assist me with the sentencing phase of my case;

32. That Court Reporter Quimby violated my civil rights by expunging that portion of the official record;

33. That AUSA Morse violated my civil rights by assisting Chief Judge Barbadoro in covering up his denial of the assistance of my standby counsel to me with the sentencing phase of my case (1)

by failing to respond to my October 6, 2004 motion in this Court for the district court to correct the record; and (2) by submitting to the Circuit Court of Appeals for the First Circuit false statements in a filing and accompanying affidavit that Chief Judge Barbadoro had never ruled or even suggested that my former standby counsel would not be available to assist me with the sentencing phase of my case;

34. That the United States Attorney for the District of New Hampshire, Thomas P. Coluntuono, is complicit in the violations of my civil rights in the above-cited actions of AUSA Morse and D.O.J. Trial Attorney Chapman because they were acting under his authority at the times of the occurrences; and

35. That the unknown designated motions judge of the Circuit Court of Appeals assigned to my case is violating my civil rights by purposely failing to rule on my motion filed with that court for an order to the district court to correct the record.

LEGAL CLAIMS WITH RESPECT TO THE VIOLATIONS
OF MY CIVIL RIGHTS PURSUANT TO BIVENS

36. That Chief Judge Barbadoro violated my civil rights to assistance of counsel and due process of law by denying me the assistance of my court-appointed standby counsel for the sentencing phase of my case.

37. That AUSA Morse and Trial Attorney Chapman violated my civil rights by failing to inform Chief Judge Barbadoro on the last day of my trial (February 12, 2004) that he was incorrect in ruling that my standby counsel would not be available to assist me with the sentencing phase of my case.

38. That Chief Judge Barbadoro violated my civil rights by ordering or otherwise conspiring with Court Reporter Celeste A. Quimby

to alter the official record of February 12, 2004 to expunge the portion of the record where he ruled that my standby counsel would not be available to assist me with the sentencing phase of my case.

39. That Court Reporter Quimby violated my civil rights by expunging that portion of the official transcript.

40. That AUSA Morse violated my civil rights by assisting Chief Judge Barbadoro in covering up his denial of the assistance of my standby counsel to me with the sentencing phase of my case (1) by failing to respond to my October 6, 2004 motion in this Court requesting that this Court to correct the record; and (2) by submitting to the Circuit Court of Appeals for the First Circuit false statements in a filing and accompanying affidavit that Chief Judge Barbadoro had never ruled or even suggested that my former standby counsel would not be available to assist me with the sentencing phase of my case.

41. That the United States Attorney for the District of New Hampshire, Thomas P. Coluntuono, is complicit in the violations of my civil rights in the above-cited actions of AUSA Morse and Trial Attorney Chapman because they were acting under his authority at the times of the occurrences.

42. That the unknown designated motions judge of the Circuit Court of Appeals assigned to my case is violating my civil rights by purposely failing to rule on my motion filed with that court for an order to the district court to correct the record.

LEGAL CLAIMS WITH RESPECT TO THE VIOLATIONS OF MY CIVIL RIGHTS PURSUANT TO 42 USC § 1985 (2) and (3)

The following actors conspired or continue to conspire, and did, or caused to be done, acts in furtherance of said conspiracies

for the purpose of impeding, hindering, obstructing, or defeating the due course of justice with the intent to deny me the equal protection of the law:

43. By remaining silent and not correcting Chief Judge Barbadoro when he ruled that my standby counsel would not be available to assist me with the sentencing phase of my case, both AUSA Morse and DOJ Trial Attorney Chapman implicitly conspired with Chief Judge Barbadoro and with each other with the intent of denying me the equal protection of the law, which states that a court-appointed standby counsel shall be available to assist an indigent pro se criminal defendant with the sentencing phase of his case.

44. By remaining silent when I filed my motion with this Court requesting that it correct the record to accurately reflect that Chief Judge Barbadoro had ruled that my standby counsel would not be available to assist me with the sentencing phase of my case, AUSA Morse implicitly conspired with Chief Judge Barbadoro to cover up the fact that he had made such a ruling.

45. By submitting to the Circuit Court of Appeals for the First Circuit false statements in a filing and accompanying affidavit to the effect that Chief Judge Barbadoro had never ruled or even suggested that my court-appointed standby counsel would not be available to assist me with the sentencing phase of my case, AUSA Morse, at the very least, implicitly conspired with Chief Judge Barbadoro to cover up the fact that he had denied me the assistance of counsel for the sentencing phase of my case.

46. Chief Judge Barbadoro and Court Reporter Quimby conspired with each other to deny me the equal protection of the law by expunging from the official record Chief Judge Barbadoro's ruling that

my court-appointed standby counsel would not be available to assist me with the sentencing phase of my case.

47. United States Attorney Coluntuono is complicit in all of the conspiracies undertaken by AUSA Morse and Trial Attorney Chapman in this case because they were acting under his authority when they entered into those conspiracies.

48. An unknown motions judge for the Circuit Court of Appeals for the First Circuit is implicitly conspiring with Chief Judge Barbadoro to deny me the equal protection of the laws by refusing to rule on my request to that court for an order to the district court to correct the record.

RELIEF REQUESTED

I, Steven A. Swan, hereby respectfully request that this Court--

A. Issue declaratory rulings on the issues I raise in this action pursuant to 28 U.S.C. § 2201;

B. Grant me any appropriate further relief regarding those declaratory rulings pursuant to 28 U.S.C. § 2202;

C. Correct the official transcript of February 12, 2004 in the case of United States v. Swan, 03-CR-036-B to reflect that Chief Judge Barbadoro had ruled at that time that my court-appointed standby counsel would not be available to assist me with the sentencing phase of my case;

D. Provide me with the appropriate relief to remedy the violations of my civil and/or other rights;

E. Assist me in ascertaining the identity of the unknown designated appellate motions judge referred to in this complaint so that I can serve him or her with a copy of this complaint and a summons. and

F. Provide such other and further relief as is authorized by law

or equity.

In no way should the relief requested herein be construed to be a request for money damages against those such as Chief Judge Barbadoro or the unknown appellate judge who are immune from liability for such damages.

I hereby certify that the foregoing facts and claims are true and correct to the best of my knowledge and belief.

Dated: February 13, 2006

Respectfully submitted,

Steven A. Swan

Steven A. Swan. pro se
00259-049 Camp
Federal Medical Center, Devens
P.O. Box 879
Ayer, MA 01432